**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. \_\_\_\_:18-cv-_____**

| | |
|---|---|
| NATIONAL LAW CENTER ON HOMELESSNESS AND POVERTY , TERRY LINDSAY, SIMA FALLAHI, and ZALONDA WOODS,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF GREENSBORO; DAVID PARRISH, *individually and in his official capacity as Greensboro City Manager*; and WAYNE SCOTT, *individually and in his official capacity as Chief of Police for the Greensboro Police Department,*<br><br>Defendants. | **COMPLAINT**<br><br>**Declaratory and Injunctive Relief Sought** |

1.     The individual Plaintiffs are residents of Greensboro, North Carolina who have engaged in solicitation within the City of Greensboro. The organizational Plaintiff is a non-profit corporation whose mission is to combat homelessness and poverty. This is an action seeking injunctive and declaratory relief from a Greensboro City Ordinance that infringes on the Plaintiffs' rights to free speech, due process, and equal protection under the First and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 14 and 19 of the North Carolina Constitution.

2.     On July 24, 2018, Defendant City of Greensboro enacted a series of restrictions on solicitation that it knew had been held unconstitutional in federal courts

across the country in the wake of the U.S. Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).

3.      Under Chapter 20, Article I, Section 20-1 of the Greensboro Code of Ordinances ("Greensboro Code"), to solicit "means actions that are conducted in the public place in the furtherance of the purpose of collecting money or contributions for the use of one's self or others." The definition of solicit expressly includes but is not limited to "panhandling, begging, charitable, or political soliciting." Soliciting also includes peddling, which is defined as "transporting goods from place to place and selling or exposing the goods for sale, or without traveling from place to place, selling or offering for sale any goods from any vehicle or device."

4.      Under Section 20-1, "aggressive" is not defined. However, the section prohibits "solicit[ing] aggressively in public places in any of the following manner":

> (1) Approaching or speaking to someone in such a manner or voice including but not limited to using profane or abusive language as would cause a reasonable person to fear imminent bodily harm or the commission of a criminal act upon his or her person, or upon property in his or her immediate possession, or otherwise be intimidated into giving money or other thing of value;
>
> (2) Intentionally touching or causing physical contact with another person without that person's consent in the course of soliciting;
>
> (3) Intentionally blocking or interfering with the safe or free passage of a pedestrian or vehicle by any means, including unreasonably causing a pedestrian or vehicle operator to take evasive action to avoid physical contact;
>
> (4) Using violent or threatening gestures toward a person solicited;
>
> (5) Soliciting from anyone who is waiting in line for entry to a building or for another purpose without the permission of the owner or landlord or their designee;

2

(6) By forcing one-self upon the company of another by continuing to solicit in close proximity to the person addressed or following that person after the person to whom the request is directed has made a negative response; or blocking the passage of the person addressed; or otherwise engaging in conduct which could reasonably be construed as intended to compel or force a person to accede to demands;

(7) By soliciting within twenty (20) feet of an automated teller machine which is defined as a device, linked to a financial institution's account records, which is able to carry out transactions, including but not limited to cash withdrawals, account transfers, deposits, balance inquires, and mortgage payments.

5.      Section 20-1's restrictions apply only to people engaged in solicitation for money or contributions, and to no one engaged in any other activity or any other kind of speech.

6.      Section 20-1 violates Plaintiffs' constitutional freedom of speech. It limits Plaintiffs' ability to use profane language of any sort in public. It prohibits Plaintiffs from gently tapping someone on the shoulder or placing a reassuring hand on someone's arm in the course of politely asking for donations. It prohibits Plaintiffs from sitting down to rest for a few minutes on a curb or sidewalk while holding a written sign asking for donations if it means other pedestrians would have to step to the side when walking past them. It prohibits Plaintiffs from holding a written sign asking for donations within sight of anyone waiting in any line. It prohibits Plaintiffs from asking any member of a group of people for a donation if one member of the group has declined, even if the people do not know each other and just happen to be standing in close proximity on the street. It prohibits Plaintiffs from holding a written sign requesting donations within 20 feet of an

3

ATM. This includes holding a sign outside a building when there is an ATM less than 20 feet away somewhere inside the building.

7. Section 20-1 further denies Plaintiffs equal protection under the law. It singles out a class of people asking for donations or contributions in the city and places a series of burdens and restrictions on just that class, without adequate justification.

8. Section 20-1 also denies Plaintiffs due process by failing to adequately specify what conduct and speech is permissible, and what conduct or speech will result in an arrest and criminal charges.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter under 28 U.S.C. sections 1331 and 1343 because Plaintiffs sue to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution.

10. This Court has supplemental jurisdiction under 28 U.S.C. section 1367 over Plaintiffs' state law claims because the same case and controversy gives rise to violations of the North Carolina Constitution.

11. This Court has the authority to issue declaratory and injunctive relief to Plaintiffs under 28 U.S.C. sections 2201 and 2202.

12. The United States District Court for the Middle District of North Carolina is the proper venue for this action under 28 U.S.C. section 1391(b) because the actions giving rise to this suit took place in this judicial district, and Defendant City of Greensboro is located within this judicial district.

4

## PARTIES

13.    Plaintiff National Law Center on Homelessness & Poverty ("NLCHP") is a nonprofit, charitable organization based in Washington, D.C. It was founded in 1989 with a mission is to end and prevent homelessness in America and is the only national legal group dedicated to this goal. As part of this mission, NLCHP educates the public about homelessness and trains and provides technical support to local and other national groups to more effectively combat homelessness.

14.    Section 20-1 will frustrate NLCHP's mission by criminalizing the behavior of peaceful solicitors based on the content of their message, deterring them from exercising their constitutional rights to request immediate assistance from members of the public, and interfering with their ability to acquire life necessities that they cannot otherwise afford. NLCHP has already been forced to divert resources to oppose Section 20-1, including: reviewing a number of different versions of proposed ordinances in Greensboro; providing written testimony to the city council; consulting by phone with the city's outside counsel regarding the constitutionality of Section 20-1 and the policy reasons why more constructive alternatives are likely to be both more effective and more cost-effective.

15.    NLCHP has standing to bring this action because if Section 20-1 is allowed to stand, it will be directly and financially impacted as it will have to devote further resources to educate and counsel persons affected by Section 20-1 and those who may represent them about their rights.

16.     The individual plaintiffs Terry Lindsay, Sima Fallahi, and Zalonda Woods, ("Individual Plaintiffs") are each residents of the City of Greensboro. Individual Plaintiffs "solicit," defined under Section 20-1 as including panhandling or peddling in places "where a government entity has title, and/or to which the public or a substantial group of persons has access, including but not limited to, any street, highway, parking lot, plaza, restaurant, theater, transportation facility, vendor location, school, place of amusement, park or playground," for money to live on. Individual Plaintiffs are living in poverty and in need of income from soliciting to meet their basic needs.

17.     Individual Plaintiffs have standing to bring this action because they are personally aggrieved in that the prohibition against solicitation, as defined in Section 20-1, violates their constitutional rights to free speech, equal protection, and due process, and restrains their ability to amass financial resources needed to live. Section 20-1 has had a chilling effect on their speech, and they are falling deeper into poverty because they are unable to continue soliciting as they had before Section 20-1 was enacted.

18.     Plaintiffs have timely filed this action challenging Section 20-1 two weeks after the Greensboro City Council enacted it into law on July 24, 2018.

19.     Defendant City of Greensboro ("the City") is a municipal corporation organized and existing under the laws of the State of North Carolina. The City adopted Section 20-1 and has authority over enforcement of the law. At all times relevant to this lawsuit, the City was and is a "person" as that term is used in 42 U.S.C. section 1983.

20.     Defendant David Parrish is Greensboro's city manager. As part of his job duties, he is charged with ensuring the law is faithfully executed within city limits has

6

oversight over the Greensboro Police Department, which is charged with enforcement of Section 20-1. He is sued in his official capacity for injunctive and declaratory relief, and in his personal capacity for nominal damages.

21.    Defendant Wayne Scott is chief of police at the Greensboro Police Department. As part of his job duties, he has supervision and control over law enforcement within city limits, including decisions on whether and how to enforce Section 20-1. He is sued in his official capacity for injunctive and declaratory relief, and in his personal capacity for nominal damages.

## FACTUAL ALLEGATIONS

### *The April 24 City Council meeting*

22.    On April 24, 2018, the Greensboro City Council voted to repeal Chapter 20 of the Greensboro Code, which was then titled "Begging or soliciting alms." At the same meeting, the Council voted 6-3 to enact the current version of Chapter 20, Section 20-1, titled "Regulations of Solicitation in Public Places." Section 20-1 creates a misdemeanor offense of "aggressive" solicitation.

7

*The May 15 City Council meeting and subsequent legal analysis of Section 20-1*

23.     During the City Council's next meeting at which votes were taken, on May 15, 2018, the Council reconsidered its 6-3 vote from the month before. During the May 15 meeting, Council Member Sharon Hightower stated on the record that after investigating Section 20-1 and speaking to people impacted by it, she wished to change her vote on the ordinance and vote against it. Council Member Hightower made a motion under Section 2-21 of the Greensboro Code to reconsider the April 24 vote, and her motion passed, which had the immediate effect of taking Section 20-1 off the books. After her motion was granted, a new vote was immediately held on the revised Chapter 20, and the Council again voted in favor of enacting Section 20-1. However, this time the ordinance passed by a 5-4 vote. Section 2-21(c) of the Greensboro Code requires a second reading at a later meeting of any ordinance that does not receive more than five votes. Because the ordinance did not receive more than five votes at the May 15 meeting, the ordinance was not re-enacted.

24.     After the May 15 meeting, the City Council received advice from its outside legal counsel that Section 20-1 was unconstitutional. The City Council was also advised by third-party lawyers, including Plaintiffs' counsel, that the provisions contained in Section 20-1 were nearly identical to provisions contained in ordinances regulating "aggressive" solicitation in other jurisdictions, and that those provisions had recently been held unconstitutional in federal district courts.

25.     After the city conducted and received legal analysis of the proposal, attorneys for the city openly advised the city council that Section 20-1 was a content-

8

based restriction on speech that was unlikely to survive strict scrutiny if challenged in court, and the city began actively considering an alternative ordinance at the advice of its counsel.

### *The July 24 City Council meeting*

26.     The first hearing on this alternative ordinance occurred during the July 24 City Council meeting. During that meeting, DeWitt F. "Mac" McCarley, outside counsel for the city, advised council members on the record that "if you call it solicitation, you've now made it content-based, and that's the thing that triggers a level of review by the Supreme Court that it will never withstand."

27.     The alternative ordinance is proposed to make three changes to Chapter 18 of the Greensboro Code, enacting Section 18-44, "Blocking or Impeding Street and Sidewalk Access"; Section 18-36.1, "Solicitation in Public Parking Garages and Public Parking Lots Prohibited"; and Section 18-46.2, "Harassment in Public Spaces Prohibited." The alternative ordinance received a 5-4 vote in favor of adoption upon first reading, and because the ordinance did not receive six votes, it requires a second reading and subsequent vote under Section 2-21(c). The Council has yet to hold its second vote on the alternative ordinance.

28.     After the City Council's 5-4 vote on the alternative ordinance, the Council recessed. Immediately after the recess, the Council held a surprise second vote on the ordinance to enact Section 20-1, which was not on the agenda for that evening's meeting. The Council had not announced that it ever planned to hold another vote on that ordinance, which many in the city had considered defunct, nor was it required to hold any

9

such vote on that ordinance on July 24. Over the advice of its own counsel, the City Council voted 5-4 to enact the ordinance, which became law immediately.

29.     After the vote to enact Section 20-1, Council Member Justin Outling stated on the record that he would welcome members of the public to file a lawsuit over the ordinance.

### *The legislative record contains no evidence justifying Section 20-1*

30.     Although Section 20-1 sets forth the city's general purposes in restricting solicitation, the city has not offered specific evidence justifying each of the restrictions in Section 20-1.

31.     The city has also not made public any evidence that the city considered other potential methods of regulating solicitation and found Section 20-1 to be the least restrictive means of doing so.

32.     Although some City Council members have said they intend for Section 20-1 to remain in place only temporarily until the council can approve a replacement ordinance, there is no justification for knowingly enacting an ordinance that is unconstitutional. Also, there is no guarantee that such a repeal is forthcoming. In the meantime, the ordinance violates Plaintiffs' and other Greensboro residents' rights to free speech, equal protection under the law, and due process under the United States Constitution and North Carolina Constitution. The injury to the Plaintiffs commenced when the constitutional violation occurred.

Case 1:18-cv-00686-WO-JLW    Document 1    Filed 08/08/18    Page 10 of 22

## **LEGAL BACKGROUND**

33.     Speech that communicates a need, asks for help, or requests charity is fully protected under the United States Constitution. Section 20-1 is facially invalid, content-based, and chills and abridges the First Amendment rights of persons who seek to solicit immediate donations for themselves or others within the city.

34.     Specifically, Section 20-1 singles out speech when the speaker's message is to ask for donations or contributions for oneself or others, but not when the speaker's message is a request for something else, such as to move out of the speaker's way.

35.     Section 20-1's restrictions are not the least restrictive means to further a compelling government interest. As several members of the community testified when Section 20-1 was being enacted, Section 20-1 is unconstitutional and the City has not provided any convincing evidence before the City Council showing that these restrictions were the least restrictive means to further a compelling governmental interest. Section 20-1 further targets, stigmatizes and demeans individuals who are homeless and/or are living in extreme poverty in the City of Greensboro. There was no evidence before the City that existing criminal laws prohibiting harassment, obstruction and assault were insufficient to protect the public, or that special criminal laws were needed to target solicitors.

36.     Section 20-1 harms Plaintiffs Lindsay and Woods, who are currently unemployed and panhandle to help pay for rent, food and personal items, by forcing them and other similarly situated solicitors to either violate Section 20-1 or to solicit in an area where they cannot effectively reach their intended audience. Plaintiff Lindsay also often

receives odd jobs and day work by panhandling, and Section 20-1 now impacts his ability to obtain these employment opportunities. As long as Section 20-1 remains in effect, the City can enforce it against Plaintiffs Lindsay and Woods at any time.

37.     Section 20-1 harms Plaintiff Fallahi, an artist who peddles handmade gift cards, artwork, scarves and other handcrafted work on the street, by forcing her to either violate Section 20-1 or to peddle her goods in an area where she cannot effectively reach her intended audience. As long as Section 20-1 remains in effect, the City can enforce it against Plaintiff Fallahi at any time.

38.     Section 20-1 has harmed and continues to harm NLCHP by compelling a diversion of their organizational resources to monitor the law. NLCHP has already been forced to divert resources to oppose Section 20-1. NLCHP now has to devote further resources to educate and counsel persons affected by Section 20-1 and those who may represent them about their rights. As long as Section 20-1 remains in effect, the City can enforce it at any time.

39.     The unconstitutional restrictions of Section 20-1 infringe Plaintiffs Lindsay, Woods and Fallahi's freedom to fully exercise their First Amendment rights, including their rights of freedom of speech and freedom of expression, in violation of the First Amendment of the United States Constitution and Article I, Section 14 of the North Carolina Constitution.

40.     The unconstitutional restrictions of Section 20-1 violate the Equal Protection Clause of the Fourteenth Amendment and Article 1, Section 19 of the North Carolina Constitution. Specifically, but not exclusively, Section 20-1 singles out a class

12

of individuals based on the content of their speech for additional burdens and punishment.

41.    The vague and uncertain restrictions of Section 20-1 violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the North Carolina Constitution by failing to inform Plaintiffs and other members of the public as to what speech or conduct will subject them to criminal penalties and what forms of speech or conduct will not.

42.    Section 20-1 has caused and will continue to cause immediate irreparable harm to the rights of the Plaintiffs and others similarly situated. If not enjoined, this irreparable harm will continue with no adequate remedy at law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Freedom of Speech**
**(First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

43.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

44.    Section 20-1 violates the right to freedom of speech guaranteed by the First Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION
**Violation of Freedom of Speech**
**(Article 1, Section 14 of the North Carolina Constitution)**

45.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

13

46.     Section 20-1 violates the right to freedom of speech guaranteed by Article 1, Section 14 of the North Carolina Constitution.

### THIRD CAUSE OF ACTION
**Violation of Equal Protection**
**(Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

47.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

48.     Section 20-1 impermissibly subjects a class of people, including those experiencing homelessness and/or poverty or who otherwise solicit for donations or contributions, to additional burdens and punishments based on the content of their speech, violating the right to Equal Protection guaranteed by the Fourteenth Amendment to the U.S. Constitution.

### FOURTH CAUSE OF ACTION
**Violation of Equal Protection**
**(Article 1 Section 19 of the North Carolina Constitution)**

49.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

50.     Section 20-1 impermissibly subjects a class of people, including those experiencing homelessness and/or poverty or who otherwise solicit for donations or contributions, to additional burdens and punishments based on the content of their speech, violating the right to Equal Protection guaranteed by Article 1, Section 19 of the North Carolina Constitution.

### FIFTH CAUSE OF ACTION
**Violation of Due Process**
**(Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

14

51.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

52.     Section 20-1's vague and uncertain requirements are a denial of due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution, because they fail to inform Plaintiffs and other members of the public as to what speech or conduct will subject them to criminal penalties and what forms of speech or conduct will not.

## SIXTH CAUSE OF ACTION
### Denial of the Law of the Land
### (Article 1, Section 19 of the North Carolina Constitution)

53.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

54.     Section 20-1's vague and uncertain requirements are in violation of the rights guaranteed by Article 1, section 19 of the North Carolina Constitution, because they fail to inform Plaintiffs and other members of the public as to what speech or conduct will subject them to criminal penalties and what forms of speech or conduct will not.

## SEVENTH CAUSE OF ACTION
### Declaratory Relief
### (28 U.S.C. §§ 2201-2202)

55.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

56.     Under 28 U.S.C. section 2201, this Court has authority to issue a judgment declaring the rights of the parties.

57.     An actual controversy exists between Plaintiffs and Defendant. Plaintiffs contend that Section 20-1 is unlawful under the First and Fourteenth Amendments to the U.S. Constitution, and Article 1, Sections 14 and 19, of the North Carolina Constitution. Defendant contends that Section 20-1 is lawful. Declaratory relief is necessary and appropriate to resolve this controversy.

## **REQUEST FOR RELIEF**

Plaintiffs respectfully ask that this Court:

a.     Declare that Section 20-1 of the Greensboro Code is unlawful under the First and Fourteenth Amendments to the United States Constitution and Article I, sections 14 and 19 of the North Carolina Constitution;

b.     Award temporary, preliminary, and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing or giving any effect to Section 20-1 of the Greensboro City Code in its entirety;

c.     Make all further orders as are just, necessary, and proper to preserve Plaintiffs' rights to free speech, due process, and equal protection under the law;

d.     Award Plaintiffs nominal damages in the amount of $1 assessed against each of the Defendants sued in their individual capacities for their past interference with Plaintiffs' constitutional rights;

e.     Award Plaintiffs their further damages in accordance with law;

f.    Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988;

g.    Tax the costs of this action against Defendant; and

h.    Grant such other relief as the Court deems just and appropriate.


Respectfully submitted this 8th day of August, 2018.


*/s/ Janet McAuley Blue__ _____*
Janet McAuley Blue
N.C. State Bar No. 9119
janetm@legalaidnc.org
Brian Hogan
N.C. State Bar No. 46119
brianh2@legalaidnc.org
Edward R. Sharp
N.C. State Bar No. 28796
eds@legalaidnc.org
Legal Aid of North Carolina, Inc.
122 N. Elm St., Suite 700
Greensboro, NC 27401
336-272-0148

*Attorneys for Plaintiffs Terry Lindsay, Sima Fallahi, and Zalonda Woods*

*/s/ Emily E. Seawell_____*
Emily E. Seawell
N.C. State Bar No. 50207
eseawell@acluofnc.org
Christopher A. Brook
N.C. State Bar No. 33838
cbrook@acluofnc.org
American Civil Liberties Union
of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611
919-834-3466

*Attorneys for Plaintiffs National Law Center on Homelessness & Poverty, Terry Lindsay, Sima Fallahi, and Zalonda Woods*

17

# Exhibit A

Ordinance No. 18-0283, Enacting Section 20-1 (Jul. 24, 2018)

ORDINANCE TO AMEND CHAPTER 13 OF THE GREENSBORO CODE OF
ORDINANCES WITH RESPECT TO LICENSES, TAXATION, BUSINESS PERMITS AND
MISCELLANEOUS BUSINESS REGULATIONS AND CHAPTER 20 OF THE
GREENSBORO CODE OF ORDINANCES WITH RESPECT TO PEDDLERS, SOLICITORS,
ETC.

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GREENSBORO:

**Section 1**. Chapter 13 is hereby amended as follows:

Chapter 13 - LICENSES, TAXATION, BUSINESS PERMITS AND MISCELLANEOUS
BUSINESS REGULATIONS

ARTICLE V. - BUSINESS PERMIT

DIVISION 1. - GENERALLY

Sec. 13-181. - Application of article.
The business permit issued under this article shall apply to persons operating or carrying on the
businesses of massage, **commercial** soliciting, ~~panhandling~~, street performing, peddling,
itinerant merchants, and mobile food vending which are physically located within the
Greensboro city limits.

Sec. 13-202. – Commercial Solicitors.

**Section 2.** Chapter 20 is hereby repealed in its entirety and re-enacted as follows:

Chapter 20 - PEDDLERS, SOLICITORS, Panhandlers, Itinerant Merchants, ETC.

ARTICLE I. - IN GENERAL

Sec. 20-1. Regulations of Solicitation in Public Places

(a)      Intent and Purpose.

It is the intent of Council in enacting this Ordinance to recognize free speech rights for all
citizens while at the same time protecting the coexistent rights for all citizens to enjoy safe and
convenient travel in public spaces free from intimidating conduct, threats, and harassment that
stem from certain types of abusive solicitation, or that may give rise to interference with other's
activities if they occur in particular settings and contexts.

The purpose is to regulate certain conduct to preserve the public order, to protect the citizens of
the City of Greensboro and to ensure the safe and uninterrupted passage of both pedestrian and
vehicular traffic, without unconstitutionally impinging upon protected speech, expression, or
conduct.

1

(b)     Definitions.

(1)     For the purpose of this section, solicit means actions that are conducted in the public place in the furtherance of the purpose of collecting money or contributions for the use of one's self or others.  As used in this ordinance, the word, "solicit" and its forms shall include the following acts:

(a)     *Panhandling, begging, charitable or political soliciting* means actions that are conducted in the furtherance of the purpose of collecting contributions for the use of one's self or others;

(b)     *Peddling* means transporting goods from place to place and selling or exposing the goods for sale, or without traveling from place to place, selling or offering for sale any goods from any vehicle or device; provided, that any separation of the acts of sale and delivery for the purpose of evading the provisions of this article, the acts shall be defined as peddling.

(c)     *Commercial Soliciting* means traveling from place to place taking or offering to take orders for the sale of goods for future delivery or for personal services to be performed in the future, regardless of whether samples are displayed or money is collected in advance, and using or occupying any building or premises for the sole purpose of taking or offering to take orders for the sale of goods for future delivery or for personal services to be performed in the future, regardless of whether samples are displayed or money is collected in advance.

(d)     *Itinerant Merchanting* means engaging in a temporary business of selling and delivering goods and using or occupying any premises; provided that no person shall be relieved from complying with the provisions of this article merely by conducting a transient business in association with any permanently established merchant.

(e)     *Street Performing* means audible or visual entertainment including but not limited to reciting or singing, acting, dancing, miming, pantomiming, playing a musical instrument or performing a theatrical or literary work.

(f)     *Mobile Food Vending* means preparing or serving food or beverages for sale to the general public from a mobile piece of equipment or vehicle.

(2)     For purposes of this section, public place shall be defined as a place where a governmental entity has title, and/or to which the public or a substantial group of persons has access, including, but not limited to, any street, highway, parking lot, plaza, restaurant, theater, transportation facility, vendor location, school, place of amusement, park, or playground.

(c)     It shall be unlawful to solicit aggressively in public places in any of the following manner:

(1)     Approaching or speaking to someone in such a manner or voice including but not limited to using profane or abusive language as would cause a reasonable person to fear imminent bodily

2

harm or the commission of a criminal act upon his or her person, or upon property in his or her immediate possession, or otherwise be intimidated into giving money or other thing of value;

(2)    Intentionally touching or causing physical contact with another person without that person's consent in the course of soliciting;

(3)    Intentionally blocking or interfering with the safe or free passage of a pedestrian or vehicle by any means, including unreasonably causing a pedestrian or vehicle operator to take evasive action to avoid physical contact;

(4)    Using violent or threatening gestures toward a person solicited;

(5)    Soliciting from anyone who is waiting in line for entry to a building or for another purpose without the permission of the owner or landlord or their designee;

(6)    By forcing one-self upon the company of another by continuing to solicit in close proximity to the person addressed or following that person after the person to whom the request is directed has made a negative response; or blocking the passage of the person addressed; or otherwise engaging in conduct which could reasonably be construed as intended to compel or force a person to accede to demands;

(7)    By soliciting within twenty (20) feet of an automated teller machine which is defined as a device, linked to a financial institution's account records, which is able to carry out transactions, including but not limited to cash withdrawals, account transfers, deposits, balance inquires, and mortgage payments.

(d)  Violations.

Any violation of this article shall be a misdemeanor and may be enforced by any one (1) or more of the remedies authorized by the provisions of G.S. § 14-4 or G.S. § 160A-175.

(e)  Severability

If any portion of this section is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such holding shall not affect the validity of the remaining portions hereof.

**State Law reference—** Regulation of begging, G.S. § 160A-179.

**Section 3.** That all sections not amended herein shall remain in full force and effect.

3

**Section 4.** That this ordinance shall become effective upon adoption.